**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 8 2005

GREGORY
 CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 02-cv-0581-RPM-BNB

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

        Plaintiff,

DALE ALTON,

        Plaintiff/Intervenor,

v.

ECHOSTAR COMMUNICATIONS
CORPORATION n/k/a DISH, LTD.,

        Defendant.

---

## CONSENT DECREE

---

## TABLE OF CONTENTS

I. RECITALS .................................................................... 1

II. JURISDICTION .............................................................. 2

III. ISSUES RESOLVED ......................................................... 2

IV. MONETARY RELIEF ....................................................... 2

V. EQUITABLE RELIEF ....................................................... 3

    A.    Scope .................................................................. 3

    B.    Injunctive Relief ..................................................... 3

    C.    Anti-discrimination Policy ........................................... 3

    D.    Procedures to Provide Reasonable Accommodation .................... 4

    E.    EEOC Input Not a Waiver .......................................... 5

    F.    Implementation of Screen-Reading Software ......................... 5

    G.    Affirmative Hiring ................................................... 6

    H.    Training ............................................................. 6

    I.    Posting of Notice .................................................... 8

    J.    Record Keeping And Reporting Provisions .......................... 8

VI. RETENTION OF JURISDICTION AND FILING OF DECREE ................ 11

VII. ENFORCEMENT ........................................................... 12

VIII. EEOC AUTHORITY ...................................................... 12

IX. NOTICE ................................................................... 13

SIGNATURES ................................................................. 14

Attachment A ................................................................. 15

## I. RECITALS

1. This matter was instituted by Plaintiff, Equal Employment Opportunity Commission ("Commission" or "EEOC"), an agency of the United States government, alleging that, in or about February and June, 1999, Defendant Echostar denied employment to Dale Alton, because of his disability, blindness, in violation of the Americans with Disabilities Act ("ADA"). Alton intervened in the lawsuit.

2. After a four-day jury trial, commencing on May 2, 2005, the jury verdict was in favor of Plaintiffs EEOC and Alton on all four claims. The jury determined damages as follows: backpay in the amount of $2,000; compensatory damages in the amount of $5,000; punitive damages in the amount of $8,000,000.00. Judgment has not entered, and is pending determination of Plaintiffs' request for injunctive relief. Injunctive relief will be determined after an evidentiary hearing which has not yet been scheduled. Echostar has moved for remittitur of the verdict, which motion is pending.

3. Plaintiffs and Defendant, desiring to settle this action by an appropriate Consent Decree ("Decree"), agree to the jurisdiction of this Court over the parties and the subject matter of this action, and agree to the power of this Court to enter a Consent Decree enforceable against Defendant.

4. This Decree is final and binding upon the parties as to the issues resolved, as well as upon their successors and assigns.

5. The parties agree that this Consent Decree fairly resolves the issues alleged in this lawsuit, and constitutes a complete resolution of all of the Plaintiffs' claims of unlawful employment practices under the ADA that were made or could have been made in this action.

Page 1 of 15

6. For the purpose of amicably resolving disputed claims, the Defendant joins with the Plaintiffs in requesting this Court to adjudge as follows:

IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

## II. JURISDICTION

7. The parties stipulate to the jurisdiction of the Court over the parties and subject matter of this action.

8. The duration of this Decree shall be four (4) years from the date of signing by the Court.

## III. ISSUES RESOLVED

9. This Decree resolves all claims for damages arising out of the issues and claims set forth in Civil Action No. 02-cv-0581-RPM-BNB.

10. Echostar and its officers, agents, employees, successors, and all other persons in active concert or participation with any of them will not interfere with the relief herein ordered, but shall reasonably cooperate in the implementation of this Decree.

## IV. MONETARY RELIEF

11. Echostar agrees to (a) pay Four Hundred Fifty Thousand Dollars ($450,000.00) by check payable to "Dale A. Gaar, P.C. COLTAF Trust Account;" and (b) issue a Form 1099. The payment shall be disbursed among the plaintiffs by Dale A. Gaar, P.C. in accordance with the agreements among the parties and their counsel. The payment shall fully satisfy the monetary obligations of Echostar to plaintiffs and their counsel, including their claims for compensatory damages, punitive damages, costs, and attorney's fees. Payment pursuant to this Paragraph 10 shall be delivered to the offices of Dale A. Gaar, P.C., within two (2) business days after entry of

the decree, or September 15, 2005, whichever is later.

## V. EQUITABLE RELIEF

### A. Scope

12. Except as specifically set forth in Paragraphs 20 (Posting) and 17 (Training), the terms of this Decree shall apply to all Customer Service Representative (CSR) positions in all Echostar call center facilities in the United States.

### B. Injunctive Relief

13. During the term of this Consent Decree, Echostar, its officers, agents, successors and other persons in active concert or participation with it, or any of them, are enjoined from engaging in any employment practice which discriminates on the basis of visual impairment.

14. During the term of this Consent Decree, Echostar, its officers, agents, successors and other persons in active concert or participation with them, or any of them, are enjoined from engaging in reprisal or retaliation of any kind against any person because such person participated in any manner in this action or in the investigation giving rise to this action.

### C. Anti-discrimination Policy

15. Echostar shall adopt and/or maintain a policy proscribing unlawful discrimination based on disability, and proscribing unlawful retaliation against any employee who complains about disability discrimination or who files a charge of discrimination regarding disability ("Anti-Discrimination Policy"). Echostar shall post and keep posted for the duration of this Decree, in a conspicuous place in each of its facilities, where notices to employees and applicants for employment are customarily kept or posted, a copy of the Anti-Discrimination Policy. For the duration of this Decree, Echostar shall make available to each employee a copy of the Anti-

Discrimination Policy. Within fifteen (15) days of the entry of this Decree, Echostar shall forward a copy of the Anti-Discrimination Policy to the Commission. Within fifteen (15) days after receiving the policy from Echostar, the EEOC may provide input as to suggested revisions to the policy. EEOC input will be advisory and Echostar's ultimate policy will be based on its own business judgment. Within fifteen (15) days after receiving EEOC input, or the expiration of time for receiving such input, Echostar will provide EEOC a letter indicating that the Anti-Discrimination Policy has been posted and made available to employees.

### D. Procedures to Provide Reasonable Accommodation

16.     Echostar shall adopt and maintain a written policy that will describe the process for determining what, if any, accommodation will be provided to employees or applicants requesting or requiring reasonable accommodation. The policy will be made available to all employees. As to all managers who in any way participate in the hiring process or who in any way have responsibilities for accepting or processing requests for reasonable accommodation, the policy must set forth the role of managers under the hiring process or under the process for considering reasonable accommodations for employees. The policy must provide general guidance on how to determine what is a reasonable accommodation, including mandatory participation in the interactive process with the applicant/employee. Within fifteen (15) days of the entry of this Decree, Echostar shall forward a copy of the Reasonable Accommodation Policy to the Commission, together with instructions for managers who participate in the process of processing reasonable accommodation requests or requirements in hiring and in the work place. Within fifteen (15) days after receiving the policy and instructions from Echostar, the EEOC may provide input as to suggested revisions. EEOC input will be advisory and Echostar's ultimate

policy and procedures will be based on its own business judgment. Within fifteen (15) days after receiving EEOC input, or the expiration of time for receiving such input, Echostar will provide EEOC a letter indicating that the Reasonable Accommodation Policy has been posted and made available to employees and that instructions have been provided to managers who participate in the process of processing reasonable accommodation requests or requirements in hiring and in the work place.

### E. EEOC Input Not a Waiver

17.    Under no circumstances shall the EEOC, by commenting or electing not to comment upon the proposed policies and trainings, be deemed to have waived its rights to investigate or litigate any alleged unlawful effects of said policy upon equal employment opportunities.

### F. Implementation of Screen-Reading Software

18.    Echostar shall enter into a personal services contract with a qualified consultant, approved by the EEOC which approval will not be unreasonably withheld, to evaluate the feasibility of implementing text-to-speech software for use by CSRs at Echostar, and to the extent reasonably feasible, perform the technical services necessary to implement text-to-speech software for use by CSRs at Echostar. Based on information available to the parties during negotiation of this Decree, it is anticipated that within six months after the effective date of this Consent Decree, text-to-speech software will be implemented for use by CSRs at Echostar. Upon request by any party, the Consultant will report to the parties regarding the status of the project for implementation of text-to-speech adaptive software at Echostar.


19.    If and when text-to-speech software is implemented for use by CSRs at Echostar, when modifications are thereafter made to the CSR software environment at Echostar, Echostar will ensure that the system, as modified, continues to be accessible to employees who are blind or visually impaired.

## G. Affirmative Hiring

20.    Provided screen-reading software is successfully installed for use by CSRs at Echostar, Echostar will hire any qualified blind or sight-impaired applicant seeking a CSR position, so long as CSRs are being hired in the location for which application is being made.

## H. Training

21.    Beginning in calendar year 2006, Echostar shall conduct training for all its employees, nationwide, on what constitutes employment discrimination. Training will include the following: (a) employee notification of the Echostar's policy and procedures for registering complaints of discrimination; (b) the penalties to employees for engaging in such discriminatory behavior; (c) Echostar's non-retaliation policy; and (d) Echostar's procedures on providing reasonable accommodation. The training will be conducted as follows:

21.1    <u>Human Resource Employees</u>.

Echostar will require all individuals who work in a human resource capacity to receive at least ten (10) hours of training *annually* regarding the ADA and other federal anti-discrimination laws. Five (5) of the ten (10) hours must directly address disability discrimination and reasonable accommodation. This provision is not intended to require that the same training be provided to all Human Resource Employees. Some or all of the training may be provided by allowing employees to self-select training from a list of appropriate training provided by outside

19.    If and when text-to-speech software is implemented for use by CSRs at Echostar, when modifications are thereafter made to the CSR software environment at Echostar, Echostar will ensure that the system, as modified, continues to be accessible to employees who are blind or visually impaired.

## G. Affirmative Hiring

20.    Provided screen-reading software is successfully installed for use by CSRs at Echostar, Echostar will hire any qualified blind or sight-impaired applicant seeking a CSR position, so long as CSRs are being hired in the location for which application is being made.

## H. Training

21.    Beginning in calendar year 2006, Echostar shall conduct training for all its employees, nationwide, on what constitutes employment discrimination. Training will include the following: (a) employee notification of the Echostar's policy and procedures for registering complaints of discrimination; (b) the penalties to employees for engaging in such discriminatory behavior; (c) Echostar's non-retaliation policy; and (d) Echostar's procedures on providing reasonable accommodation. The training will be conducted as follows:

21.1    <u>Human Resource Employees</u>.

Echostar will require all individuals who work in a human resource capacity to receive at least ten (10) hours of training *annually* regarding the ADA and other federal anti-discrimination laws. Five (5) of the ten (10) hours must directly address disability discrimination and reasonable accommodation. This provision is not intended to require that the same training be provided to all Human Resource Employees. Some or all of the training may be provided by allowing employees to self-select training from a list of appropriate training provided by outside

vendors. Each Human Resource employee, however, must be required to obtain the specified hours of training.

### 21.2   Managerial and Supervisory Employees

Echostar will require all individuals who work in a managerial or supervisory capacity to receive at least four (4) hours of training *annually* regarding the ADA and other federal anti-discrimination laws. Two (2) of the four (4) hours must directly address disability discrimination and reasonable accommodation.

### 21.3   Non-managerial Employees.

New employee orientation will be revised to incorporate training regarding the ADA, including reasonable accommodation and the interactive process for determining what, if any, accommodation will be provided. Any voluntarily provided EEO training for non-supervisory employees, including any training regarding sexual harassment, will incorporate a segment regarding the ADA, including reasonable accommodation and the interactive process.

22.   Echostar agrees that the first such training for each employee group identified in Paragraph 17, above, will take place within one hundred eighty (180) days after entry of this Decree.

23.   The Commission, at its discretion, may designate one or more Commission representatives to attend any of the live in-house training described above, and the representative(s) shall have the right to attend and fully observe all of the sessions. Echostar shall provide the Commission with thirty (30) days advance notice of any live in-house training provided under Paragraph 17, not including make-up sessions.

## I. Posting of Notice

24. Within fifteen (15) days of the entry of this Consent Decree, Echostar shall post at all of its Colorado facilities in a conspicuous place where notices to employees and applicants for employment are customarily kept or posted, the Notice attached as Attachment A to this Decree. The Notice shall remain posted for the duration of this Decree. If the Notice becomes defaced or illegible, Echostar will replace it with a clean copy. Echostar shall send written notice to the Commission, within twenty (20) days of entry of this Decree, verifying that the Notice has been properly posted.

## J. Record Keeping And Reporting Provisions

25. For the duration of this Consent Decree, Echostar shall keep all its records concerning implementation of this Consent Decree. The Commission shall have the right to interview any personnel employed by Echostar for the purpose of determining Echostar's compliance with the terms of this Consent Decree. In the event the Commission exercises its right to interview personnel pursuant to this paragraph, said interviews shall be scheduled with due regard to the convenience of the individual to be interviewed.

26. Each party shall bear its own costs in conjunction with the maintenance of records, preparation of any report, access or copying of records, or interviews of employees.

27. Echostar shall provide semi-annual reports for each six-month period following the date the Court signs the Decree. The reports shall be due thirty (30) days following the respective six-month period, except the final report which shall be submitted to the Commission two weeks prior to the date on which the Consent Decree is to expire.

28. Each semi-annual report shall provide the following information:

**Complaints of Disability Discrimination**

28.1 The name, address and telephone number of each person making a complaint of disability discrimination to Echostar or to any federal, state, or local government agency.

28.2 A brief summary of each complaint, including the date of the complaint, the name of the individual(s) who allegedly engaged in the discriminatory conduct, Echostar's response to the complaint, the name of the person who investigated or responded to the complaint, and what, if any resolution was reached;

28.3 Copies of all documents memorializing or referring to the complaint, investigation, and/or resolution thereof;

28.4 For purposes of this Paragraph 28.4, the term "complaint of discrimination" will include any written or verbal complaint which alleges disability discrimination, or alleges conduct, which Echostar recognizes as presenting an allegation of disability discrimination. For example, an employee may complain that he was denied promotion because of disability, or that co-workers call him "gimp" and tease him about his disability. These are "complaints of discrimination" even though the employee does not expressly allege discrimination.

### Reasonable Accommodation Procedures and Results

28.5 The name, address and telephone number of each person requesting that Echostar provide reasonable accommodation for sight impairment;

28.6 A brief summary of each request for accommodation, including the date of the request, the person or persons to whom the request was made, the person or persons responsible for responding to the request, any effort to engage in the interactive process with the person requesting accommodation, what accommodation was requested, whether the request was granted, and if not, an explanation of the reasons for denying the request, whether an accommodation was provided and if so, what accommodation was provided, and an explanation of the reasons for providing the accommodation.

28.7 Copies of all documents memorializing or referring to the request for accommodation, investigation, and/or resolution thereof.

### Affirmative Hiring

28.8 Echostar shall provide the name, address, phone number and date of hire for each blind or sight-impaired applicant hired as a CSR and using screen-reading software to perform the job duties.

### Training

28.9 Echostar shall provide confirmation of attendance and completion of training, whether interactive or live. For live trainings, Echostar will submit copies of the agenda of the training programs, identify the

individuals providing the training, and provide the registries of attendance. For interactive training, Echostar provide the EEOC with access to the interactive training.

**Posting of Notice**

28.10  Echostar shall confirm to the Commission, that the Notice required to be posted under Paragraph 24 of this Consent Decree has been properly posted or, if removed, was promptly replaced, during the duration of the reporting period.

29.  All personnel information, including employee names and contact information, provided by Echostar to the Commission in semi-annual reports as provided under Paragraph 28, will be treated by the Commission as information received during an EEOC investigation, protected from public disclosure under 42 U.S.C. § 2000e-8(e).

30.  In the event the EEOC is served with a request for records related to the litigation or records submitted pursuant to the Consent Decree, EEOC will promptly provide Echostar with a copy of the request, at least fourteen (14) days before the date on which the EEOC is obligated to respond to the FOIA request, or as soon as practicable under the circumstances.

## VI. RETENTION OF JURISDICTION AND FILING OF DECREE

31.  This Court shall retain jurisdiction of this cause for purposes of compliance with this Decree and entry of such further orders or modifications as may be necessary or appropriate to effectuate equal employment opportunities for employees. Upon submission of the final report referenced in Paragraph 27, and the expiration of a period of thirty (30) days after submission of said report, within which the Commission has not filed an objection thereto, the Commission and

Echostar shall promptly file a Joint Stipulation for Dismissal with Prejudice ("Joint Stipulation") of this civil action, upon which filing this Decree shall automatically dissolve, and this Civil Action shall be dismissed with prejudice. If the Commission files an objection to the final report within said 30-day period, the Parties will file the Joint Stipulation promptly after the Court's resolution of the Commission's objection.

## VII. ENFORCEMENT

32. There is no private right of action to enforce Echostar's obligations under the Decree and only the Commission and Echostar, or their successors or assigns, may enforce compliance herewith.

33. Enforcement may be had by the Commission or Echostar petitioning the Court for enforcement of the terms of this Decree.

## VIII. EEOC AUTHORITY

34. With respect to matters or charges outside the scope of this Decree, this Decree shall in no way limit the powers of the Commission to seek to eliminate employment practices or acts made unlawful by any of the statutes over which the EEOC has enforcement authority, and are unrelated to the claims asserted in this lawsuit.

## IX. NOTICE

35. Any notice, report, or communication required under the provisions of this Decree shall be sent by certified mail, postage prepaid, to the appropriate parties as follows:

| | |
|---|---|
| Regional Attorney<br>Denver District Office<br>Equal Employment Opportunity<br>Commission<br>303 E. 17th Avenue, Suite 510<br>Denver, CO 80203 | Echostar Communication Corp.<br>Attn: General Counsel<br>9601 South Meridian Blvd.<br>Englewood, CO 80112 |

SO ORDERED this 8th day of September, 2005.

BY THE COURT:

_____
United States District Judge

APPROVED AS TO FORM:

_____
Rita Byrnes Kittle
Trial Attorney
(303) 866-1347

Equal Employment Opportunity
Commission
303 East 17th Avenue, Suite 510
Denver, CO 80203

Attorneys for Plaintiff EEOC

_____
Dale A. Gaar, Esq.
1600 Stout Street, Suite 1000
Denver, CO 80202
(303) 446-9300

Attorney for Plaintiff/Intervenor Dale Alton

_____
Dan S. Cross, Esq.
Overton Law Firm, PC
1080 Kalamath Street
Denver, Colorado 80204
(303) 832-1120

Attorneys for Defendant Echostar
Communications Corporation


BY CONSENT:

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

BY: _____
Joseph H. Mitchell
Regional Attorney

8/31/05
Date

ECHOSTAR COMMUNICATIONS
CORPORATION

BY: _____
David Moskowitz
General Counsel

9/2/05
Date

DALE ALTON

_____
Dale Alton
8/29/05
Date

**ATTACHMENT A**

## NOTICE

The following notice is being posted pursuant to the terms of a Consent Decree reached between the parties in <u>EEOC v. Echostar Communications Corporation</u>, filed in the United States District Court for the District of Colorado, Civil Action No. 02-M-0581 (BNB).

Management of Echostar Communications Corporation wishes to emphasize the company's fundamental policy of providing equal employment opportunity in all of its operation and in all areas of employment practices, and to ensure that there shall be no discrimination against any employee or applicant for employment on the grounds of race, color, religion, sex, pregnancy, national origin, age or disability. This policy extends to insurance benefits and all other terms, conditions and privileges of employment.

_____Pursuant to the Americans with Disabilities Act, it is unlawful for an employer to discriminate against an employee or job applicant based on disability. Further, it is unlawful for any employer to retaliate against an employee because he or she has opposed discriminatory employment practices, including disability discrimination, or because he or she has filed a charge of discrimination with any municipal, state or federal equal employment opportunity agency, or because he or she has participated in an investigation of a charge of discrimination.

Echostar Communications Corporation respects the right of its employees and applicants for employment to work in an environment free from discrimination. Accordingly, Echostar Communications Corporation reaffirms its commitment to complying with the strictures of the Americans with Disabilities Act, in that it is our policy to prohibit all discrimination in terms of hiring, promotion, compensation, benefits, discharge or discipline because of disability.

Any employee who believes that he/she has suffered discrimination on the basis of age, race, color, religion, sex, pregnancy, national origin, or disability, has the right to contact the EEOC directly at 1-800-669-4000. In compliance with federal law, no official at Echostar Communications Corporation will retaliate against an employee who makes an internal complaint of discrimination or who contacts the EEOC or its state counterpart.

This Notice shall remain posted for the term of five years.

Echostar Communications Corporation

By:_____     _____
                                                                                              Date